**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **CURTIS J. LANDSBERGER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | |
| ) | **CCB-09-CV-3389** |
| **MARTEK BIOSCIENCES CORP., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTEK**
**BIOSCIENCES CORP.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
<u>**FOR THE ENTRY OF SUMMARY JUDGMENT**</u>

Mark D. Gately (Bar #00134)
Scott R. Haiber (Bar #25947)
Andrea W. Trento (Bar #28816)
HOGAN & HARTSON LLP
Harbor East
100 International Drive
Baltimore, MD  21202
Phone:        (410) 659-2700
Facsimile:    (410) 659-2701
Email:        mdgately@hhlaw.com

*Attorneys for Defendant Martek Biosciences*
*Corp.*

I.      INTRODUCTION

On December 23, 2009, this Court entered judgment for the Defendants in the action

styled *Csabai v. Martek Biosciences Corp., et al.*, Case No. 1:09:CV-02280.  The Complaint in

the above-captioned action is essentially a repackaged version of the *Csabai* complaint and

merits the same result.  This Court should dismiss Plaintiff's defective pleading.[1]

To begin, as in the *Csabai* case, Plaintiff's claims are barred by the limitations period

applicable to allegations of federal securities fraud.  The absolute five-year *statute of repose*

prevents Plaintiff from recovering for the many acts alleged in the Complaint that occurred prior

to December 16, 2004 – five years before the filing of the Complaint.  More importantly,

Plaintiff is barred by the two-year *statute of limitations* from pursuing any and all claims

concerning acts or disclosures that occurred prior to December 16, 2007 because Plaintiff clearly

was on inquiry notice of such claims by that time.  Accordingly, the Court should rule as a matter

of law that all claims raised by Plaintiff in the Complaint are barred.

Plaintiff's Complaint also fails to satisfy *any* of the elements for a claim of securities

fraud.  Perhaps most glaringly, Plaintiff cannot establish standing because he does not allege that

he purchased or sold Martek stock subsequent to the supposed misrepresentations of which he

complains.  Similarly, the Complaint does not establish reliance, transaction causation or loss

causation because Plaintiff nowhere alleges that he purchased Martek stock as a result of any

misstatements or omissions not barred by limitations.  Nor has Plaintiff adequately alleged a

plausible basis for the Court to find scienter, or identified any material misstatements with the

---

[1]  Plaintiff has not purported to effect service upon any of the individual defendants.  *See* Dkt. No.
8 (return of service reflecting service only upon Martek's registered agent).  Accordingly, only
Martek need respond to Plaintiff's Complaint at this time.

particularity required by Rule 9(b).  In sum, although Plaintiff tosses the word "fraud" about with abandon, he provides no legal grounds for this serious charge.

Defendants recognize that federal courts often will grant a *pro se* plaintiff an opportunity to amend a complaint before entering an order of dismissal with prejudice.  In this case, however, amendment would be futile.  Plaintiff cannot overcome his limitations problems by more careful pleading.  Nor can he reasonably be expected to cure the numerous legal deficiencies in his Complaint.  Therefore, the Court should now dismiss Plaintiff's Complaint in its entirety with prejudice.  Alternatively, the Court should enter summary judgment in favor of Defendants because Plaintiff's claims are barred by limitations.

## II.   STATEMENT OF FACTS

### A.   The Allegations of the Amended Complaint.

#### 1.   The Parties.

##### a.   *Plaintiff Curtis J. Landsberger*

Plaintiff, Curtis J. Landsberger, seeks to "recoup . . . $115,000.00 plus 18% fraud interest . . . ."[2]  The Complaint, however, does not allege any detail regarding the nature of those losses.  For example, the Complaint does not allege:  (i) when Plaintiff purchased Martek stock; (ii) at what price he purchased Martek stock; (iii) when he sold his stock; or (iv) at what price he sold.  Nor does the Complaint provide any information directly tying Plaintiff's "losses" to the actions of Martek.  For example, Plaintiff does not allege the typical causation pattern for a securities fraud plaintiff:  (i) a misrepresentation that inflates the stock price; (ii) a purchase by plaintiff of stock at that inflated price; and (iii) subsequent revelation of the truth that causes the

---

[2]  Compl. at 30.

\\\BA - 061954/000097 - 278548 v1

stock price to drop.  In fact, the Complaint does not even allege that Plaintiff is now, or ever have been, a Martek stockholder.  Instead, the Complaint only cryptically states that Plaintiff seeks to recover Plaintiff's "losses from after the initial illegal sales took place from 2004 through 2007 . . . ."[3]

<em>b.      Defendants</em>

Martek is a corporation headquartered in Maryland that develops products derived from microalgae.  Martek is a manufacturer of both Docosahexaenoic Acid ("DHA"), a long-chain fatty acid, and Arachidonic Acid ("ARA"), which is derived from fungus.[4]  Martek has developed and marketed natural oils which promote brain and eye development in infants and which are used in infant formula.[5]

Also named as Defendants are past and present officers and members of the Company's Board of Directors.  These Defendants include Henry Linsert, Jr., Richard J. Radmer, Thomas C. Fisher, Jerome C. Keller, Peter L. Buzy, George P. Barker, Jules Blake, Robert J. Flanagan, Ann L. Johnson, Douglas J. MacMaster, John H. Mahar, Sandra Panem, Eugene H. Rotberg and James Flatt (together, the "Individual Defendants").  With respect to the overwhelming majority of these individuals, the Complaint alleges no facts suggesting they had any direct involvement in the acts of which Plaintiff complains.  In any event, none of these individuals has yet been served with the Complaint.

---

[3] *Id.*

[4] *See, e.g., id.* at 4 (noting that Martek manufacturers both DHA and ARA).

[5] *See id.* (noting use in infant formula

\\\BA - 061954/000097 - 278548 v1

## 2.    The Alleged Fraudulent Scheme.

Plaintiff contends that Defendants have defrauded Martek investors for at least seven years.  More particularly, Plaintiff alleges that Defendants have "fraudulently misrepresented nearly every aspect . . . of [the Company] to the public equity market from the time of Martek's purchase of OmegaTech in March of 2002 to the present, 2009."[6]  The crux of Plaintiff's claim appears to be that Defendants inflated the price of Martek stock after the 2002 purchase of OmegaTech by creating unrealistic expectations regarding the Company's growth potential.[7]  Plaintiff also complains that Martek did not reveal certain alleged impediments that supposedly prevented the Company from achieving its financial goals after the acquisition of OmegaTech.

Although the Complaint is exceedingly difficult to decipher, much less summarize, it appears Plaintiff believes there are nine separate problems that supposedly have prevented Martek from achieving its full potential:  (1) problems with the 2002 OmegaTech purchase and related Patent Litigation;[8] (2) a 2003 "Hexane pollution problem" at Martek's Winchester plant;[9] (3) hoarding of product by customers from 2002 to 2005;[10] (4) the alleged failure of Martek to obtain certain approvals from the National Academy of Sciences (the "NAS") and the Food and Drug Administration (the "FDA"); (5) the 2005 disclosure by Martek of hoarding of inventory

---

[6]  *Id.* at 1.

[7]  *See, e.g.*, *id.* at pg. 5 (first category of alleged fraud is the "[f]raudulent representation of the OmegaTech purchase from April 2002 to the present.").

[8]  *See, e.g., id.* at 20-21.

[9]  *See, e.g., id.* at 21 (discussing Martek's alleged "second major fraud")

[10]  *See, e.g., id.* at 21-22 (discussing alleged "concealment" of this hoarding as the "third major fraud").

by its customers;[11] (6) a supposedly flawed February 2006 8-K regarding a potential deal with Kellogg; (7) Martek's alleged failure "to move the cheaper DHA's into the formula mix";[12] (8) an unexplained alleged problem with an NIH Alzheimer study; and (9) a supposed 2009 non-disclosure regarding an "EFSA health claim opinion."

               a.      *Allegations that Defendants knew Martek Customers were Hoarding Product*

Plaintiff's Complaint focuses, in part, upon an alleged scheme whereby Martek's financial statements supposedly were inflated by the failure to disclose sooner the accumulation of inventory by Martek customers.[13]  This has a familiar ring.  In *In re Martek Biosciences Corp. Securities Litigation*, Civ. Action No. MJG 05-1224 (filed in 2005) ("*Martek I*"), it was alleged, as Plaintiff alleges here, that Defendants touted unrealistic revenue projections that could not be achieved.[14]  It also was alleged, as it is here, that Defendants knew Martek's projections were unrealistic and its financial statements inaccurate because Defendants allegedly knew that customers were hoarding Martek's products to create a "safety stock."[15]  In other words, the 2005 class action alleged that Defendants knew a significant portion of Martek's product was being stockpiled and not being used in the ordinary course of the customer's business.  When Martek announced the stockpiling to investors, its stock fell 45.9%.[16]

---

[11]  *See, e.g., id.* at 24.

[12]  *Id.*  at 25-26.

[13]  *Id.* at 21-22.

[14]  *See Martek I*, Consol. Am. Class Action Compl. ¶ 3 (attached as Ex. 1 to the Declaration of Scott R. Haiber in Support of Defendant's Motion to Dismiss or, in the Alternative, for the Entry of Summary Judgment (the "Haiber Decl.")).

[15]  *Id*. ¶¶ 3-7.

[16]  *Id.* ¶ 10.

\\\BA - 061954/000097 - 278548 v1

b.      *The OmegaTech Acquisition the Subsequent Patent Litigation*

Another focus of Plaintiff's conspiracy theory concerns the acquisition of OmegaTech and subsequent patent litigation involving Martek.  Specifically, on September 23, 2003, Martek instituted a patent infringement action (the "Patent Litigation") against Nutrinova, Inc., Nutrinova Nutrition Specialties and Food Ingredients GmbH and Lonza, Ltd. (collectively, "Lonza").[17]  It appears that Plaintiff believes, without offering any support for this theory, that the Patent Litigation prevented Martek from obtaining lucrative deals that otherwise would have materialized.  What may not at first be obvious from Plaintiff's Complaint is that Martek won the Patent Litigation and obtained a judgment against Lonza[18]--a judgment that was affirmed on appeal.[19]

c.      *Failure to Obtain Certain Approvals*

Another prong of Plaintiff's alleged conspiracy concerns the alleged failure of Martek to obtain certain certifications and approvals.  For example, Plaintiff alleges that Martek failed to obtain an independent dietary endorsement from the National Academy of Science.[20]  Plaintiff also cryptically complains about a more recent NIH Alzheimer study and "EFSA health claim opinion."[21]  Plaintiff alleges that the Company did not adequately disclose any of these events, but he marshals no evidence in his Complaint that either had any actual impact on Martek's

---

[17]   *See, e.g.*, Compl. at 21; *see Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp. 2d 537 (D. Del. 2007), *aff'd in part and rev'd in part*, ___ F.3d ___, 2009 WL 2780367 (Fed. Cir. Sept. 3, 2009) ("*Martek II*").

[18]   *See Martek II*, 520 F. Supp. 2d at 559-60.

[19]   *See Martek II*, 2009 WL 2780367, at *15.

[20]   *See* Compl. at 23.

[21]   *Id.* at 26-27.

\\\BA - 061954/000097 - 278548 v1

performance, and there is no allegation that the eventual revelation of any of these events actually led to a decrease in the Company's stock price.

### d.    Other Matters

In addition to the matters described above, Plaintiff also briefly complains about other events.  For example, the Complaint alleges that Defendants incorrectly disclosed a March 2003 "Hexane pollution problem" at one of the Company's Winchester facility.[22]  Plaintiff also attacks in vague terms the Company's supposed failure to switch to cheaper DHA-S,[23] although he nowhere identifies particular disclosures relating to this topic that are inaccurate.

### 3.    Trading by Insiders.

Throughout the Complaint, Plaintiff repeatedly accuses Martek insiders of having traded on inside information.[24]  Indeed, these allegations are critical to Plaintiff's overall "pump and dump" theory.  This illegal trading allegedly occurred from April 2003 through September 2005.  Notably, all of the alleged insider trading occurred more than two (2) years before Plaintiff filed suit.

The Complaint, however, is perhaps more remarkable for what is fails to allege regarding insider purchases.  Plaintiff does not allege:  (1) whether any of these sales occurred immediately before or after any significant public announcements; (2) whether other insiders were purchasing Martek stock during the relevant time period; or (3) whether Plaintiff traded contemporaneously with any insiders.

---

[22]  *Id.* at 21.

[23]  *Id.* at 25.

[24]  *See, e.g.*, *id.* at 10-15.

\\\BA - 061954/000097 - 278548 v1

**D.      Procedural History.**

Plaintiff filed his Complaint on December 16, 2009.  Since that time, Plaintiff has failed to effect service of process upon any of the Individual Defendants.  Accordingly, only Defendant Martek has moved at this time to dismiss the Complaint.  The remaining defendants presumably will respond if and when they eventually are served with process.

**III.     ARGUMENT**

**A.      Plaintiff's Claims Are Barred By Limitations.**

As in the *Csabai* action, all of Plaintiff's claims in this action are barred by limitations. Plaintiff, like the other "friends, family and business associates" of Mr. Csabai, has been on inquiry notice of his claims for a substantial period of time and cannot now complain about events that happened many years ago.

Claims of federal securities fraud are governed by the statute of limitations set forth in 28 U.S.C. § 1658, which provides in relevant part:

> [A] private right of action that involves a claim of fraud, deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, may be brought not later than the earlier of –
> (1)    2 years after the discovery of the facts constituting the violation; or
> (2)    5 years after such violation.[25]

---

[25]  28 U.S.C. § 1658(b).

The five-year bar set forth in subsection 2 is a statute of repose that may not be extended.[26]  In this case, that statute of repose operates as an absolute bar to claims relating to any misrepresentations, illegal trades or other actions that occurred before December 16, 2004 (*i.e.*, five years before the filing of the Complaint).  This includes the majority of Plaintiff's putative claims.  Thus, for example, Plaintiff's claim regarding Martek's failure to adequately disclose the true risk/reward value of the OmegaTech purchase – a purchase that occurred in 2002 – is barred.  So too is Plaintiff's claims regarding the 2003 "Hexane pollution problem" and the 2002 "National Academy of Sciences Failure."  Similarly barred would be any claims for alleged insider trading that supposedly occurred before December 16, 2004.  Accordingly, as in *Csabai*, the Court should enter judgment in favor of Defendants with respect to any claims of securities fraud based upon events occurring before December 16, 2004.

Of perhaps greater significance, however, is the two-year limitations period set forth in subsection 1 of the statute.  In the Fourth Circuit, that two-year limitations period begins to run when fraud is discovered or should have been discovered by the exercise of due diligence.[27]  Thus, "discovery of facts constituting the alleged misrepresentatives or omissions can be by actual notice, by constructive notice, or by inquiry notice."[28]  As the Fourth Circuit has explained:

> Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam.  Merely bringing suit after the scheme has been laid bare through the efforts of

---

[26]  *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 111 S.Ct. 2773 (1991) (noting that equitable tolling is inconsistent with principles underlying statute of repose, in the context of predecessor 1 and 3 year statutes of limitations and repose, respectively, applicable to securities fraud claims).

[27]  *See Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993).

[28]  *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 816 (D. Md. 2002), *aff'd, Cohen v. USEC, Inc.*, 70 Fed. App. 679 (4th Cir. 2003).

- 9 -

> others . . . will not satisfy the requirements of due diligence when
> there have been prior warnings that something was amiss.[29]

Therefore, once a plaintiff has been placed on inquiry notice of possible fraud, he is obligated to

conduct a reasonable investigation and commence suit before the expiration of two years.

Here, because Plaintiff was placed on inquiry notice long before December 16, 2007, all

of his claims are barred by limitations.  The events that form the crux of the Complaint – the

OmegaTech acquisition, stockpiling of product by Martek customers, the "Hexane pollution

problem" at Martek's Winchester plant, failure to obtain NAS approval, disclosure regarding the

potential Kellogg opportunity – all occurred more than two years before the filing of the

Complaint.  Moreover, these events were hardly secret.  The hoarding allegations, for example,

were the subject of the *Martek I* class action instituted in this Court in 2005.  Similarly, the

Patent Litigation was a public event that was disclosed to stockholders; Plaintiff was free at any

time to review the filings in that litigation.  And the events at the Winchester plant were

disclosed years before this litigation commenced.  Accordingly, the Court may rule based solely

on the face of the Complaint that Plaintiff's claims are barred by limitations.[30]

Defendants believe the allegations of the Complaint convincingly demonstrate that

Plaintiff was on inquiry notice of his claims prior to December 16, 2007.  Nevertheless, if the

Court disagrees, it may follow the same path trod in the *Csabai* action and enter summary

judgment in favor of Defendants based on the additional evidence submitted by Martek.  As

Martek previously noted, years before he filed suit, Mr. Csabai repeatedly posted on a public

---

[29] *Brumbaugh*, 985 F.2d at 162 (internal citations omitted).

[30] To be sure, the Complaint also vaguely challenges disclosures concerning two more recent events (the NIH Alzheimer study and the EFSA opinion), but contains no allegation that Plaintiff purchased Martek stock before these events and subsequently disposed of that stock at a loss.

\\\BA - 061954/000097 - 278548 v1

internet forum his allegations regarding fraud at Martek.  In those postings, Mr. Csabai leveled

the same accusations of fraud, a "pump and dump" scheme and insider trading that now form the

basis of this action.[31]  Plaintiff, like the rest of the public, easily could have reviewed Mr.

Csabai's public postings.  Moreover, as a member of Mr. Csabai's supposed "friends, family and

business associate" group, it strains credibility to suggest Plaintiff was unaware of Mr. Csabai's

allegations of fraud.  Like Mr. Csabai, Plaintiff therefore was on full inquiry notice of potential

claims of fraud more than two years before he filed suit and is now barred from pursuing those

claims.

## C.    Plaintiff Has Not Stated A Claim Upon Which Relief Can Be Granted.

If the Court declines to dispose of this case on limitations grounds, then it should dismiss

the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A motion to dismiss filed pursuant to Rule 12(b)(6) will be granted if there is either a "lack of

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

theory."[32]  In analyzing the Plaintiff's Complaint, the Court need not accept as true unreasonable

inferences, unwarranted deductions, or conclusory legal allegations couched as factual

allegations.[33]  Moreover, as the United States Supreme Court has clarified, "a plaintiff's

---

[31]  *See* Haiber Decl. Exs. 2-D and 2-E (attaching Feitel Declaration with Mr. Csabai's internet postings as exhibits.).  *See also* Mem. of Law in Support of Defts.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 12-15, *Csabai v. Martek Biosciences Corp., et al.*, No. 1:09-CV-02280-CCB [Dkt No. 20-1] (summarizing and quoting those postings).

[32]  *Quraishi v. Shalala*, 962 F. Supp. 55, 57 (D. Md. 1997) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

[33]  *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996); *Dow v. Jones*, 232 F. Supp. 2d 491, 495 (D. Md. 2002) (citing *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)).

\\\BA - 061954/000097 - 278548 v1

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[34]

### 1.    Plaintiff has not alleged a claim of securities fraud.

A plaintiff suing in a private action under Section 10(b) of the Securities Exchange Act must allege and prove six elements:  (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[35]  The Complaint satisfies not one of these requirements.

> ### a.    *Plaintiff lacks standing because the Complaint does not plead a connection between any misrepresentation and his alleged loss*

The most obvious failing of Plaintiff's Complaint is the complete failure to allege a connection between the alleged misrepresentations and his purchase or sale of the Company's securities.  Plaintiff nowhere alleges in the Complaint *when* he purchased Martek stock.  The Supreme Court, however, has made clear that only purchasers or sellers of securities may bring a private action for damages under Rule 10b-5.[36]  Similarly, the Fourth Circuit has held that "persons who held shares and delayed his sale on the basis of misinformation lack standing."[37]

---

[34]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[35]  *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 119 (4th Cir. 2009) (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 128 S.Ct. 761, 768 (2008)).

[36]  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917 (1975); *see also Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 151 (1987) ("Because [plaintiff's] injury did not result from its purchase or sale of securities, it has suffered no injury cognizable under Rule 10b-5.").

[37]  *In re Mut. Funds Inv. Litig.*, 384 F. Supp.2d 845, 854 (D. Md. 2005) (quoting *Gurley v. Documation, Inc.*, 674 F.2d 253, 257 (4th Cir. 1982)).

Finally, this Court has made clear that options traders lack standing to sue.[38]   Accordingly,

because Plaintiff does not allege a connection between his alleged loss and any misrepresentation,

he has no standing to pursue a claim of securities fraud.[39]

<em>b.   Plaintiff has failed to allege transaction loss</em>

To recover for securities fraud, a plaintiff must allege and prove that the defendant's

misrepresentations caused the plaintiff's economic loss.[40]   One component of this requirement is

"transaction causation – that the violations in question caused the [plaintiff] to engage in the

transaction in question."[41]   Thus, a plaintiff must prove that "*but for* the fraudulent statement or

omission, the plaintiff would not have entered into the transaction."[42]   In this case, in order to

allege such "but for" causation, Plaintiff obviously must plead that he purchased Martek stock

after the alleged misrepresentations of which he complains.

---

[38]   *See, e.g., Data Controls N., Inc. v. Fin. Corp. of Am., Inc.*, 688 F. Supp. 1047, 1050 (D. Md. 1988).

[39]   For this reason, Plaintiff also cannot assert a claim for insider trading under section 20A of the Securities and Exchange Act, 15 U.S.C. § 78t-1.  Not only does a claim under section 20A require a "well-plead," predicate "violation of the Exchange Act," *In re E.Spire Comm'cns, Inc., Sec. Litig.*, 127 F. Supp. 2d 734, 750 (D. Md. 2001), which Plaintiff has not pled, but it requires specific allegations of contemporaneous trading by Plaintiff and the alleged insider.  *See, e.g., In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664 (E.D. Va. 2000) (three-day temporal separation between plaintiff's trades and insider's trades insufficient to establish contemporaneity under section 20A).  Since Plaintiff has not identified any of their actual Martek transactions, any claims they are purporting to assert under section 20A should be dismissed.

[40]   *See Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 632 (E.D. Va. 2003) ("a plaintiff raising a § 10(b) claim must allege that the omission or misrepresentation giving rise to the claim is the proximate cause of some loss on the part of the Plaintiff").

[41]   *Gasner v. Bd. Of Supervisors*, 103 F.3d 351, 360 (4th Cir. 1996) (quoting *Bennett v. United States Trust Co.*, 770 F.2d 308, 313 (2d Cir.1985)).

[42]   *Morris*, 277 F. Supp. 2d at 632 (emphasis in original) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001); *see also Gasner*, 103 F.3d at 360 ("[a] direct or proximate relationship between the loss and misrepresentation must be shown").

Plaintiff nowhere alleges, however, that he purchased Martek stock *after* a misrepresentation by Martek.  Nor does he allege that he purchased or sold stock *because* of a misrepresentation or omission by Martek.

c.      *Plaintiff has failed to allege loss causation*

Loss causation refers to a "causal connection between the material misrepresentation and the loss."[43]  A federal securities fraud plaintiff "must not only prove loss causation – that the material misrepresentations or omissions caused the loss for which the plaintiff seeks damages – but he must also plead it with sufficient specificity to enable the court to evaluate whether the necessary causal link exists."[44]  At a minimum, this means that a plaintiff must prove that a misrepresentation or omission, and the subsequent disclosure of the truth, was "a substantial cause of the investment's decline in value."[45]

Here, Plaintiff alleges a "pump and dump" scheme whereby Martek created an artificial bubble in the price of its stock.  What Plaintiff does not allege, however, is that he sold his stock and lost money when the truth was revealed.  For example, Plaintiff nowhere alleges, much less with specificity, that the eventual disclosure of the Patent Litigation or the actions of the FDA led to a decline in Martek's stock price.  Nor does Plaintiff allege a causal connection between his "loss" and the supposed revelation of the true facts concerning such matters as the Patent Litigation or the actions of the FDA.  He therefore has not come close to alleging loss causation with the specificity required by federal law.

---

[43]  *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 173 n.2 (4th Cir. 2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S.Ct. 1627 (2005)).

[44]  *Id.* at 186.

[45]  *Miller v. Asensio & Co.*, 364 F.3d 223, 233 (4th Cir. 2004) (quoting *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997)).

- 14 -

### d.     Plaintiff has failed to allege reliance

"To state a private § 10(b) securities fraud claim, a plaintiff must alleged that it relied on the defendant's false or misleading statement in purchasing or selling the defendant's securities."[46]  Plaintiff nowhere alleges such reliance in his Complaint.  And because he nowhere alleges that he purchased Martek stock after the various disclosures he challenges, he cannot avail himself of the "fraud-on-the-market" presumption of reliance articulated in *Basic, Inc. v. Levinson*.[47]  Thus, for the same reasons that Plaintiff does not adequately allege standing or loss causation, he also does not allege reliance.

### e.     Plaintiff has failed to allege material misstatements or omissions

Plaintiff also has failed to adequately allege material misstatements or omissions  The standards this Court should apply in assessing materiality are well-established.  "A misrepresented or omitted fact is material if there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable investor."[48]  "Further, [t]he alleged misstatements and omissions relied upon by Plaintiff must be considered in light of the  'total mix' of information . . . ."[49]  The issue, therefore, is whether the disclosures, "when read as a whole, would have misled a reasonable

---

[46]  *In re Mut. Funds*, 566 F.3d at 120.

[47]  485 U.S. 224, 247, 108 S.Ct. 978 (1988).

[48]  *In re USEC Sec. Litig.*, 190 F. Supp.2d at 815 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126 (1976)).

[49]  *Recupito v. Prudential Sec., Inc.*, 112 F. Supp. 2d 449, 455 (D. Md. 2000).

investor about the nature of the securities."[50]  Finally, "[t]he mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement."[51]

Importantly, questions of materiality may appropriately be determined by the Court as a matter of law on a motion to dismiss.[52]  Thus, where alleged misstatements or omissions "are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality, the court may rule them immaterial as a matter of law."[53]  Such is the case here.

Plaintiff's primary theory of recovery is that optimistic statements by Defendants regarding the business prospects of Martek proved inaccurate.  Under the federal securities laws, however, "[f]orecasts are not guarantees of, or insurance policies for, a firm's future performance, nor are they understood as such by reasonable investors."[54]  Indeed, the Securities Exchange Act of 1934 provides a "safe harbor" for forward-looking statements accompanied by cautionary warnings.[55]  Applying this doctrine, numerous courts have held that statements amounting to mere "puffery" are not actionable.[56]  This same doctrine precludes Plaintiff's claims to the extent

---

[50]  *Id.* (citations omitted).

[51]  *Id.* at 454 (citations omitted).

[52]  *See*, *e.g.*, *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir. 2004) ("No shortage of cases . . . make clear that materiality may be resolved by a court as a matter of law"); *see also In re USEC Sec. Litig.*, 190 F. Supp.2d at 826 ("Where, as here, reasonable minds cannot differ on the question of materiality, the court may rule them immaterial as a matter of law") (internal quotations and citation omitted).

[53]  *Recupito*, 112 F. Supp. 2d at 454 (quoting *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 342 (3d Cir. 1999)).

[54]  *Glassman v. Computervision Corp.*, 90 F.3d 617, 626 (1st Cir. 1996).

[55]  15 U.S.C. § 77z-2(c).

[56]  *See, e.g., In re USEC*, 190 F. Supp.2d at 822 (holding that statements were predictive, and therefore not actionable, where they contained terms such as "expects," "anticipates," "plans"

they challenge forward-looking statements by Defendants regarding Martek's expected future performance.

Moreover, plain common sense belies the notion that many of the purported misrepresentations and omissions identified by Plaintiff are material.  For example, Plaintiff nowhere alleges that Martek stock declined significantly after, or because of, the eventual disclosure of the true facts regarding the Patent Litigation, the actions of the NAS, etc.  How then can Plaintiff demonstrate that these items had a material impact upon Martek's stock price?

Finally, Plaintiff has not identified with the particularity required by Rule 9(b) the alleged omissions and misrepresentations of which he complains.  Instead, Plaintiff improperly relies upon generalities.

### f.    Plaintiff has failed to properly allege scienter

To allege an actionable securities fraud claim, Plaintiff "must allege facts that support a 'strong inference' that each defendant acted with at least recklessness in making the false statement."[57]  "Merely alleging facts that lead to a strained and tenuous inference" that defendants knew or acted in reckless disregard of the alleged fraud "is insufficient to satisfy the pleading requirement."[58]  Here, Plaintiff alleges no facts sufficient to meet his heavy burden.

Here, Plaintiff seeks to establish scienter by alleging that the individual Defendant were engaged in a "pump and dump" scheme whereby they profited from sales based upon inside

---

and "expected to be"); *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212 (4th Cir. 1994) (statement that company was "on target toward achieving" was "not material as a matter of law").

[57]  *Hunter*, 477 F.3d at 184 (citations omitted).

[58]  *In re E. Spire Comm. Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 749 (D. Md. 2001)

information.  But to establish scienter on the part of Martek, it is not enough merely to allege that purchases were made by insiders.

As the Fourth Circuit has held, insider trading implies scienter "only if the timing and amount of a defendant's trading [are] unusual or suspicious."[59]  Here, Plaintiff alleges insufficient facts to draw *any* conclusions about trading in Martek stock by insiders.  For example, Plaintiff does not allege the total size of Defendants holdings relative to his sales.  Nor does he allege whether any insiders were purchasing, or why all Defendants did not dispose of their entire stockholdings if in fact they were participants in a grand conspiracy.

### C.     Dismissal With Prejudice Is Appropriate.

The PSLRA sets "'a high standard of pleading which if not met results in mandatory dismissal'"; therefore, the PSLRA generally "'does not contemplate amending complaints.'"[60]  Indeed, the PSLRA would not achieve its purpose to "'provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis' if Plaintiffs 'were allowed to amend and amend until they got it right.'"[61]

In this case, Plaintiff cannot cure the fundamental deficiencies in his pleading through clever drafting in an amended pleading.  This is particularly true with respect to Defendants' limitations defense.  The Court therefore should effectuate the intent of the PSLRA and dismiss the Complaint with prejudice.

---

[59]  *Hunter*, 477 F.3d at 184.

[60]  *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 722 (E.D. Va. 2003) (quoting *Champion Enters., Inc. Sec. Litig.*, 145 F. Supp.2d 871, 872 (E.D. Mich. 2001)).

[61]  *Id.* at 722-23 (quoting *Champion*, 145 F. Supp. 2d at 873, 877).

\\\BA - 061954/000097 - 278548 v1

**IV.     CONCLUSION**

For all of the foregoing reasons, Plaintiff's claims should be dismissed in his entirety.

Dated: March 3, 2010

Respectfully submitted,

                                  /s/

Mark D. Gately (Bar #00134)
Scott R. Haiber (Bar #25947)
Andrea W. Trento (Bar #28816)
HOGAN & HARTSON LLP
Harbor East
100 International Drive
Baltimore, MD  21202
Phone:      (410) 659-2700
Facsimile:   (410) 659-2701

*Attorneys for Defendant Martek Biosciences
Corporation*